Good morning. May it please the court. I'm Danielle Franco-Malone here representing the Washington State Nurses Association. With me are my partner Dave Campbell and Tim Sears, General Counsel for WSNA. I'd like to try to reserve a few minutes if possible. This case concerns registered nurses working in an acute care hospital caring for seriously ill patients. They often work 12-hour shifts and unfortunately are often not able to receive the rest breaks they need to care for patients. Eight years ago WSNA, representing the nurses that it represents at Tacoma General, initiated a lawsuit against Multicare seeking injunctive and monetary relief for the hospital's failure to provide its nurses with rest breaks. So here's the problem I have with with your position. There's no question is there that the hospital at all times said in effect during the negotiations we think the buddy system can be adjusted to work things out consistent with the settlement. They didn't do that. The arbitrator correctly finds that they haven't been complying with the settlement but then he goes ahead and says you can't have the buddy system period and the district court says well you have to consider alternatives under the buddy system that might comply with the with the settlement. Why isn't that right? Well your honor what the arbitrator held in his decision was that both parties were equally resolute in their stance on the buddy system. He noted that Multicare was unwavering that it could work as a mechanism and that WSNA was equally resolute in holding that it did not work as a means to provide break relief. So what the arbitrator concluded was that it remained unspecified. There was not an express prohibition on using the buddy system but in the end after hearing five days of testimony about how the buddy system was actually working the arbitrator correctly held that the buddy system had failed to fulfill Multicare's promise to ensure that nurses were affirmatively relieved of their patient care duties and that the hospital would not allow any such mechanism to exceed the patient-to-nurse ratios contained in the hospital staffing plans. But the buddy system has many different possible alternatives right? I mean the one that was tried was not working agreed so there had you were no buddy system will work. What was his basis for doing that? Well your honor again after five days of testimony hearing from nurses in several different departments throughout the hospital the arbitrator had heard several examples about departments that use the buddy system and he concluded that that system was not fulfilling the hospital's obligation under the settlement agreement. He also heard testimony about other means of break relief such as responsibilities of the nurse going on break and he decided that that did fulfill the hospital's obligation under the settlement agreement to provide affirmative relief of all patient care duties and doing so in a way that would ensure that nurses would not be asked to take care of more patients than the staffing plans permitted. This is really a question for your adversary but I put it to you as well. Did the hospital in the proceedings before the arbitrator suggest any variation in the buddy system from the one that they were using which they thought was okay which the arbitrator found was not or did they simply rest on we think it's okay we think what we're doing is okay? Your adversary presented to the arbitrator an alternative. Did they say we think what we're doing is right but in the alternative if you disagree here's another way the buddy system could work and would satisfy you or did they not do that? It's really a factual question. Did they or did they not do that? No your honor I don't believe they did and that was what the arbitrators conclusion that it was non-viable was based on. If if the panel thinks that the arbitrator or the district court erred when it made the determination that the arbitrators ban of the buddy system didn't draw its essence from the settlement agreement what do you think the scope of our ruling should be? Your honor given the exceedingly deferential standard of review that is given to labor arbitration decisions we believe that the proper remedy in this case is to confirm the arbitration award. As the Supreme Court has noted arbitration decisions are given nearly unparalleled levels of deference and as this court has recently observed even using the framework of whether the arbitrators decision was plausible is inappropriate because it encourages judges to take an active substantive role rather than the hands-off approach that's required. Given that the newly stated test in the circuit is simply whether the arbitrator looked at and construed the agreement or did he not we believe that in this case that standard is easily met. The arbitrator clearly looked at and carefully construed. Oh isn't the isn't the standard of view different for the remedies that it is for the termination of whether there's been a violation they they it's one thing to say you know we will give the broadest possible leeway to the arbitrator and determinate whether or not there was a breach of contract or violation or whatever the situation involves but when the arbitrator goes ahead and says and here now are the proper remedies haven't we heard said that there are while still deferential our standard of review is a little less extensive. No your honor I don't believe that's correct in fact the Supreme Court back in the enterprise wheel decision emphasized that the need for deference to an arbitrators to refer to an arbitrator is especially important when it comes to remedies and the arbitrators need for flexibility in crafting remedies. But why shouldn't we remand to the district court for it to look at those issues with regard to remedies in the first instance? Because your honor this court's review of the district court is de novo. You sit in the same position in reviewing the arbitrators decision. Remand is unnecessary where this is clearly a essence from the agreement. I think it's important to note as well that case law from this circuit makes clear that where there are perceived conflicts in the remedies that are available for an arbitrator to award it is for the arbitrator to decide how to reconcile those conflicts. The medic ambulance case is instructive where a collective bargaining agreement provided that employees could only be discharged for just cause but it also provided that an statement and only three months of back pay. This court concluded in that case that where there are conflicts like that in the remedies that appear available it is for the arbitrator to decide how to reconcile those conflicts. That's what the parties bargained for. Did the scope of the district court's ruling reach the issues of staffing and a relief nurse versus what Judge Rakoff was talking about alternatives to the buddy system modifying the buddy system? No, your honor. The district court simply reached the first question and concluded that the resolution of the arbitrator ordering the hospital to cease violating the settlement agreement by its use of the break buddy system did not draw to essence and it did not reach the second question about using break relief nurses to affirmatively meet the hospital's obligation to relieve nurses of patient care. And you think that we sitting here in the appellate court should do that in the first instance? Reach those questions of remedies? We do, your honor. But the extent that there are, well, are there factual issues to be resolved in that process as to whether the buddy system could be sufficiently modified to meet the obligation to adopt mechanisms, practices, or policies to assure? Your honor, to the extent that there are factual questions surrounding that issue, those are questions that clear case law establishes the arbitrator and the arbitrator alone can resolve. This court in the recent Carpenter's decision found that it was air for the district court to make its own factual findings about the scope of the issues presented to the arbitrators. I think the question is no, there is no further fact-finding. The arbitrator was in charge of the fact-finding and concluded based on extensive testimony, based on two years of attempts to utilize the break buddy system after the settlement, he concluded as a factual matter that it was non-viable if the hospital were to meet its obligations to provide relief without forcing nurses to take on more patients than was safe. And I would like to reserve some time on rebuttal unless there are any further questions now. All right. Thank you. Good morning. May it please the court, I'm Karin Jones appearing on behalf of MultiCare Health System. With me is my partner, Mr. Tim O'Connell, as well as our client representative, Ms. Laura Edwards. MultiCare recognizes that a great degree of deference is afforded to the arbitrator's decision in the labor arbitration context. In fact, while MultiCare disagrees with the is not appealing that issue here. But that deference is not without its limits. This case falls squarely under one of the well-recognized exceptions in which vacating the arbitrator's decision is not only appropriate but is required. As this court recognized in the 2000 case of Garvey versus Roberts, where the arbitrator's award draws no legitimacy from the collective bargaining agreement, or in this case the party's settlement agreement, a court has no choice but to choose to enforce the award. Well, I want to follow up a little bit on the questions I put to your adversary. Do you agree with her that the hospital did not present to the arbitrator an alternative use of the buddy system that would create real difficulties with it as it was then being implemented? I would not agree with that characterization, no, your honor. Over five days of testimony, the hospital introduced evidence and how the buddy system was implemented in different units, and it was implemented in different ways. For example, in some units, charge nurses or management would step in to relieve nurses as part of that buddy system process, and in some units it was quite successful. In fact, the arbitrator found that in the majority of units in the hospital, the majority of nurses were receiving the majority of their breaks. So this really is isolated to a couple problem units, which is what the arbitrator himself recognized. When you got up before the district court, did you again say, while we disagree with the arbitrator's conclusion, even if you agree with it, you should nevertheless allow us to put, introduce a variation on the buddy system, or was that simply something that the district court came up with by itself? No, I believe that was an argument in advance, maybe not verbatim in those words, but certainly we have always challenged, MultiCare has always challenged the remedy imposed, and that's the blanket preclusion of the buddy system throughout every unit of the hospital. So the argument would be, since that's something that the parties agreed should remain in place in the contract, that an alternative remedy should have allowed that continuation to take place. Well, how would the buddy system work and still satisfy the objections that the arbitrator had? Well, one option would be, for example, putting a maximum number of patients that someone could be watching over for a colleague, ensuring that there's more communication between management and the nurses, that was a it has been quite successful in certain units of the hospital. I want to know about one position might be, is that your position as to what should now be done? I believe it is one of the tools in the toolbox that MultiCare should be allowed to continue to utilize, yes. And I hope that answers your question. I guess the reason I... I'm not so interested in the toolbox, I'm really interested in what you're building. So I'm trying to pin you down on, is that if we were to agree with the district court that the buddy system should be given some second shot, what is specifically the way you would design the buddy system now that would not violate, in your view, the settlement? Well, and that's a difficult question to answer in part because MultiCare has always disagreed with the conclusion that it somehow violates the staffing plan. And we are stuck with that given the deference afforded to the arbitrator. I believe methods where it could continue to be utilized would, again, involve heightened communication between management and the nurses to facilitate those breaks, to ensure that folks are not taking on a patient load that makes them uncomfortable regarding their professional responsibilities. Ensuring that there's more communication between the nurses on the unit as to when and how those breaks will be taken and who is going to cover. And perhaps, if we were to go back to Judge Rakoff's original questions, these improvements, the buddy system that you have just proffered to us, were those specifically addressed before the arbitrator? In some form, yes, Your Honor. I mean, certainly there's quite a bit of testimony over the five days about including expert testimony on how the buddy system can improve their health systems. And the communication piece is one key part of that. So in this case, WSNA has referenced and heavily relied on this court's recent decision in Southwest Regional Council of Carpenters v. Drywall Dynamics, which has discussed the limitations on the court's review of the plausibility of an arbitrator's interpretation of the contract. But the key point is this case does not present a question of MultiCare asking the court to evaluate the plausibility of the arbitrator's interpretation of the contract here. We're not asking the court to weigh the evidence or to substitute its judgment for that of the arbitrators. MultiCare is, in fact, basing its arguments on the arbitrator's own factual findings regarding the terms of the contract and asking that the arbitrator be held to those findings. The remedy imposed by the arbitrator did not draw its essence from the contract, as that contract was interpreted by the arbitrator himself. As this court continued to recognize in the Drywall Dynamics case, a court may intervene when an arbitrator's award fails to draw its essence from the agreement, such that the arbitrator is merely dispensing his own brand of industrial justice. The arbitrator's counsel for WSNA referenced an unpublished 2010 decision from the circuit regarding resolving conflicts within the agreement, and a couple points on that. One, that case involved a just cause provision, and I would submit that that's sort of a unique realm in the labor arbitration context. It's quintessentially delegated to the arbitrator as an equitable power, just cause, and here we're dealing with a straight breach of contract case. Also, that's an unpublished decision, and I believe that's for good reason. It's directly contrary to published case law in our circuit, such as Phoenix newspapers, to the extent it suggests that something to which the parties agreed can be completely ignored by the arbitrator. And here that's what occurred. The remedy imposed by the arbitrator deviated from the terms of the parties contract in two significant ways. The first was by prohibiting a blanket prohibition of the use of the buddy system throughout the hospital, and the second was by mandating that multi-care increase staffing in each and every unit of Tacoma General Hospital. Before imposing those remedies, the arbitrator expressly found that multi-care had rejected any such terms in bargaining the contract, and he also found that those terms were not, in fact, included in the contract. The contract reflects that position of multi-care. First, the arbitrator found that multi-care, during bargaining, rejected any suggestion that the break buddy system be prohibited. The arbitrator further held that the language mechanisms, policies, or practices, or I reversed that, mechanisms, practices, or policies, in section 1A1 of the agreement, was intended to permit multi-care's continued use of the buddy system. Despite those findings, the arbitrator ruled that multi-care ceased from using the buddy system throughout the hospital. In addition, the arbitrator found that multi-care, during bargaining, rejected terms that would have imposed mandatory staffing increases, and the contract reflected that. But the arbitrator then proceeded to rule that each unit needed to staff and assign a specific break nurse, so increasing staffing hospital-wide. The arbitrator acknowledged that the parties entered into the agreement that preserved the right of multi-care to utilize the buddy system, and then mandated that multi-care completely cease utilizing it. He also acknowledged the parties entered into an agreement for which multi-care had rejected terms. In the findings, the arbitrator had the drafts, the various drafts of the agreements, right, and it, the arbitrator found that even though multi-care wanted to continue using the buddy system, there was no explicit rejection of the ban. Is that, isn't that supported by the record before the agreement? There is no explicit provision in the agreement regarding the buddy system, but he also went on to find that even though it wasn't explicitly written in there, the language, mechanisms, practices, or policies did allow for its continued use by multi-care, and that multi-care was unwavering in its position that that would be the case. And I believe he held that language as the concession that would allow multi-care to continue utilizing that system. Did that answer your question? Well, I'm talking about whether the district court's conclusion that the arbitrator's ban of the buddy system didn't draw its essence from the settlement agreement, and whether the arbitrator's contrary finding was supported by the evidence that was before the arbitrator. I know that at some point before the district court, there was a declaration put in that the buddy system during the course of the party's negotiation, but that declaration didn't appear to be, to have been presented to the arbitrator. I see. Yes, Your Honor, there was... What the arbitrator had was the various drafts, and then in looking at those drafts, the arbitrator's conclusion was, yes, I'm aware, and I acknowledge that multi-care wanted to continue using the buddy system, but there wasn't any and so that was the basis of the arbitrator's finding. I don't believe that that is what the arbitrator found. He did not find that there was no explicit rejection of a ban on the break buddy system. He found that multi-care, in fact, rejected any such suggestion during the negotiation process. And there was substantial evidence before the arbitrator about those negotiations, including the proposals that were exchanged and testimony from the negotiators who were there. Am I correct in understanding the record that the declaration that was presented to the district court was not before the arbitrator? That particular declaration was not before the arbitrator. That was just before the district court. It was not inconsistent with the arbitrator's findings. It was just presented as context primarily on the staffing issue, the increased staffing issue, and less so on the buddy system piece of it. I'd like to briefly discuss the issue of remand to different arbitrator. Here, this is a situation where the arbitrator below has indicated his willingness to act contrary to the party's intent as expressed in their agreement and as he interpreted the contract. This is not a situation such as before the district court if you remanded a district court judge with instructions to following a mistake of law with instructions to act accordingly, the district court judge would still be subject to this court's review. Here, if it returns to the arbitrator, as we all know, there's a highly deferential standard towards the arbitrator's decisions. And so his further actions will only be subject to judicial review under really narrow circumstances. So it's just another circumstances where the arbitrator has acted with such disregard for the party's intent that when it is remanded, it should be sent back to the president. What's your authority for that? You're saying when you're not claiming that he has a conflict of interest or anything like that. You're just saying, well, we really thought his original decision was off the wall. So you can't trust him when we send it back. I mean, that's I don't I know of authority that supports that kind of transfer to a new arbitrator. Do you have an authority to that effect? Yeah, and I agree there's no sort of off-the-wall standard for remand to a different arbitrator. But it's our position that if you look at the case law as a whole, examining when remand to different arbitrators appropriate, there's an overarching theme of looking at whether the arbitrator will be able to carry out his duties going forward with an unbiased and and an unbiased approach as well as following the letter of the law in the way that he's mandated to do by the federal labor laws. All right. Thank you. The parties here never agreed that MultiCare had the right to continue using the buddy system. They did agree that MultiCare would ensure nurses were relieved and that in no case would that result in a violation of the staffing plan and the nurse-to-patient ratios they contained. The arbitrator correctly found that the use of the buddy system was non-viable if MultiCare was to live up to that promise. The arbitrator's finding in that regard is a verity on appeal. It's a factual matter that the arbitrator made that was for well-founded points of reasoning. First, he determined that the buddy system failed to affirmatively relieve nurses and instead left them to work it out themselves. Second, he found that MultiCare's experts had failed to explain how the buddy system could possibly be used without requiring nurses to care for more patients than the staffing plan allowed. Third, he found that after two years of experience, the buddy system was failing as evidenced by the And fourth, the arbitrator found that MultiCare had failed to explain how a nurse could walk away from her patients, leaving them in the care of her buddy while maintaining her professional, legal, and ethical obligations to her patients. For all of those reasons, the arbitrator found that there was simply no way for the buddy system to work, that it was non-viable if MultiCare was to live up to the promises that it had made in the settlement agreement. The arbitrator did not find that WSNA ever agreed to give permission to continue using the break buddy system, and MultiCare cannot point to any proposal WSNA ever tried but failed to get into the agreement to ban the buddy system. Instead, MultiCare relies entirely on comments the arbitrator made about the parties posturing and bargaining, what their positions were, not what was actually agreed to or even what was proposed, but the puffing up and posturing that they did at the bargaining table. If that's the standard that this court is going to use to decide whether or not an arbitration award can be vacated, it's going to invite parties to try to re-litigate every contract they've negotiated when they lose an arbitration, taking the position that they never would have agreed to that contract if they had known that an arbitrator was going to issue a particular remedy. The cases cited by MultiCare in support of the idea that the remedy should be vacated actually support WSNA's position because in each of those cases, the arbitrator imposed on the parties as a remedy the very same thing that that party had tried but failed to secure at the bargaining table. And here, in this case, MultiCare was the only party that made a proposal about break buddies. It made a proposal that it should be allowed to use break buddies as a specific mechanism, and WSNA adamantly rejected that proposal and insisted on the language that any mechanism used could not result in a violation of the staffing plan. If the arbitrator in this case had given MultiCare the unfettered right to continue using the break buddy system, notwithstanding the express promise and the agreement not to violate the staffing ratio, he would have committed the exact same error as the arbitrators in the Phoenix and the Hormel cases. I would note also that in the Phoenix case upon which MultiCare relies, it emphasizes again the need for deference to an arbitrator's remedies. And in that case, the court used the old plausibility framework, which has since been retired, and concluded that the arbitrator's remedy in that situation was not rationally derived from the framework of the collective bargaining agreement and was not a plausible interpretation of the agreement. In this case, particularly given the recent carpenters' re-articulation of the standard, there's simply no way to say that the arbitrator did not look at and construe the party settlement agreement when he crafted his remedy, ordering MultiCare to cease violating the agreement through the use of the buddy system and to begin providing actual relief so that nurses could take their breaks. We're here today on behalf of nurses who have devoted their careers to taking care of patients and for eight years have been fighting for the right to be safely relieved so that they could take rest breaks. The parties in their settlement agreement agreed for disputes such as this to be arbitrated to avoid precisely this type of expensive and lengthy proceeding, yet we're here now five years after that agreement and the nurses are still not being relieved for breaks in the way the agreement requires as determined by the arbitrator. We would ask that you confirm the award. Thank you very much, counsel, both sides for your argument. The matter is admitted for the session by the court.
judges: Fernandez, Nguyen, Rakoff